CASES IN THE SUPREME COURT

TOWN OF WILLISTON *v.* WILLIAM WHITE.

A bond executed to a town, conditioned to indemnify such town against the maintenance of any person, whose legal settlement is in such town, whether he be, or be likely to become chargeable, or not, is a *legal contract*, and not without consideration.

The power, given to the county court to release spendthrifts from guardianship, is so unlimited, that this court would not revise their exercise of such power, unless a very strong case of abuse of such person were shown.

A deed given by such spendthrift, under the order of the county court, to indemnify the town from loss by his becoming chargeable to such town, although executed as a condition upon which such spendthrift is ordered to be released from guardianship, is not on that account void.

*Quære.*—Whether the English statutes of uses, of Henry VIII, is in force in this state.

If it be, such deed, when executed to some third person in trust for the town, is not within the operation of that statute.

THIS was an action of ejectment for land in Williston.—Plea, general issue, and trial by the court.

On the trial in the county court, it was admitted by the defendant, that he claims the premises sued for, by virtue of a deed from Daniel Hurlbut, dated since 12th of March 1825, and that he was in possession.

The plaintiff claimed title by virtue of a deed executed by said Hurlbut, on the 12th of March 1825, to Jeremiah French, in trust for the plaintiffs, and conditioned to be void if the said Hurlbut, his heirs or assigns, should well and truly indemnify and save harmless the said town of Williston from all expenses, costs and charges, which might be incurred by said town, by reason of said Hurlbut or his family becoming chargeable to said town, as paupers. The plaintiff proved that said Hurlbut became chargeable to said town in 1834, and had ever since been supported by said town, as a pauper.

The defendant then showed the proceedings of Chittenden county court, at the March term 1825, upon a petition of said Hurlbut to be discharged from a guardianship imposed upon him in consequence of excessive drinking, &c.; upon which proceedings it was "considered and adjudged, that the " said Hurlbut be discharged from the guardianship set forth " in said petition, and be restored to the possession and con- " trol of his estate, upon condition to indemnify the said town " from all costs, charges and expenses, which may be incur- " red by said town by reason of said Hurlbut or his family

" becoming chargeable to said town of Williston, as paupers, " which said condition is complied with this 12th day of March " 1825."

The plaintiff further showed, that the said deed from Hurlbut to French was executed after the discharge of Hurlbut from said guardianship.

The county court rendered judgment for the defendant, to which plaintiff excepted.

*C. Adams* for plaintiff.

The deed from Hurlbut to French, being in trust for the town, the fee is transferred to the use, and the town thereby became seized of the premises demanded.—4 *Kent's Com.* 294. *Norton v. Leonard* 12. *Pick. Rep.* 156.

The parties were legally competent to pass the title of the land. Hurlbut, having been discharged from his guardianship, was freed from any legal disability. The town is a corporation, and, as such, has a general power to take and hold real estate.—1 *Bl. Com.* 475. *Worcester v. Eaton,* 13 *Mass. Rep.* 371.

There are but two questions, that can by any possibility be raised ; the legality of the object, and the interest of the town. The object, that the parties had in view, was to indemnify the town against the pauperism of Hurlbut and his family. It is admitted that courts have the power to set aside the contracts of parties, if the object of the contract is illegal in its nature, or forbidden by positive law.

With this limitation, parties must be allowed the most perfect liberty. Courts are not to make contracts for parties, nor judge of their expediency.

But the object of the deed in question was not illegal. It is not in its nature immoral, nor against any public policy, nor in violation of any positive enactment.

The objection, that the town have not a sufficient interest, is not well founded. It is not necessary that a case of pauperism should actually have occurred, to raise an interest in the town. It is equally the duty of the town to prevent pauperism, as to relieve when it occurs. It is on this ground that they may sequester the property of the individual, to prevent extravagance and waste, and demand security from putative fathers. They have an interest in the subject. This is clear from their acknowledged liability to support their

poor, and this interest is sufficient to maintain their right in the security. Whether a bond of A. to B. that C. should be of good behavior, could be sustained without showing some interest in B. is problematical; but if B. has an interest in the subject, as if C. is in the employment of B., the doubt is removed, and the bond would be held binding. So a bond or mortgage by Hurlbut to a stranger town might be inoperative, for want of interest in the subject; for though, by possibility, Hurlbut might gain a settlement in such town, the interest would be too remote. But the case is changed when the bond or mortgage is taken to the town where he has an actual settlement, for they have an interest in the subject, and a very direct one, too; and the case must be strongly marked to authorize a court to set aside any security, voluntarily given, for want of interest in the party to whom it is given.

An objection is sometimes raised, that a mortgage of this kind operates as a fraud upon future purchasers, but this we deny. It cannot operate as a fraud when the conditions are open to observation, and are not fictitious or false. If this objection means any thing, it is, that future purchasers may deceive themselves as to the liability, but if so, it is their own fault; for the condition being open to observation and of record, they are bound to judge for themselves as to the certainty or uncertainty of any liability. It stands on the footing of all bonds or mortgages for faithfulness by persons in official or private employment. Recent events have shown the necessity of security to the public for official employment, and that the bail should be well indemnified by the principal. This security to the public is usually by bond, but the security by the principal to his bail may, with more propriety, be by mortgage; and yet this security is liable to the same objection that is made to the mortgage in this case. So any one in a private employment, as the cashier of a bank, or a clerk in a mercantile house, or an apprentice, may be called on to give security for faithfulness, and yet the security would be open to the same objection.

But this embarrassment is merely an accidental circumstance, and the hindrance of the free transfer of real estate, if an evil, grows out of the power and the right of the owners to incumber his estate, and they, who purchase under him, must judge, at their own peril, as to the extent of the liability.

*Maeck & Smalley*, for defendant.

1. The statute of 27 Henry VIII. has no operation here. The common law of England and the British statutes are of no authority here, further than they have been introduced by our legislative acts. As to how far we have introduced the common law, see the Statute, p. 57.

2. But even if the statute of uses is in force here, this conveyance comes not within it. Where a conveyance or devise is made to a trustee for the use of a third person, and it appears, either from the terms made use of, or from the purpose and object of the conveyance, that any thing was to be done by the trustees in regard to the estate, he took the legal estate, for, without the legal estate, he could not execute the trust. 2 Wms. Saunders 11, note 17. *Sylvester* v. *Wilson*, 2 Term R. 444. The intention of the parties will be regarded. *Horton* v. *Horton*, 7 Term Rep. 652. *Newhall* v. *Wheeler*, 7 Mass. R. 189. *Gregory* v. *Henderson,* 4 Taunt. 772; where Chambre, Justice, carried the doctrine so far as to say, that, from the mere circumstance of appointing a trustee, it was pretty clear he was to have the legal estate. *Right* v. *Smith*, 12 East, 454. *Keene* v. *Deardon*, 8 East, 248. *Kenrick* v. *Beauclerk*, 3 Bos. and Puller, 175. *Norton* v. *Leonard*, 12 Pick. 150.

The circumstances attending the conveyance evidently show the trustee was to be active in the management and disposition of the property. It was the duty of the trustee, necessarily resulting from his situation, to appropriate the rents and profits of the property, and even the property itself, to the support of Hurlbut; and if the whole property was expended in the support of Hurlbut and his family, the town of Williston could have no claim on it.

If the town, by virtue of the deed, took the property, they took it but as trustees. They have no claim on it, and must expend it or receive the rents and profits for the sole use of Hurlbut and his family; and, it is insisted, they are incapable of acting as trustees for that purpose.

The conveyance, if it conveys any interest whatever, is in the nature of mortgage, and plaintiffs are *cestui que trusts* only. But *cestui que trusts* of a mortgage cannot maintain

an action of ejectment to recover possession of the land mortgaged. *Somes* v. *Skinner*, 16 Mass. 348.

The conveyance from Hurlbut to French was a mere voluntary conveyance. There was no debt due from Hurlbut to French, or the town of Williston. He was under no legal obligation to them, or either of them, nor had they any legal right on him by which they could require or compel him to execute the deed. The deed then cannot prevail against a subsequent *bona fide* purchaser, though there was no actual fraud in taking it. *White* v. *Sansom*, 3 Atkyns, 312. *Townsend* v. *Wyndham*, 2 Ves. 10. *Goodright* v. *Moses*, 2 Wm. Black. 1019. *Nunn* v. *Wilsmore*, 8 T. R. 528. *Doe ex. dem. Otley* v. *Manning*, 9 East, 59.

The opinion of the court was delivered by

REDFIELD, J.—It has been decided in this state, (Pawlet v. Strong, 2 Vt. R. 442), that a bond, executed to a town, conditioned to indemnify the town against the maintenance of any person, whose legal settlement is in such town, is a legal contract; whether such person be, or be likely to become, chargeable to such town, or not. And it is very certain such contract is not a voluntary contract. It is as much upon good consideration, as any other contract, to indemnify one against a contingent liability. It is not necessary to consider whether the English statute of the 27th of Elizabeth, in regard to the effect of a voluntary conveyance against a subsequent *bona fide* purchaser, is in force in this state or not. The conveyance in this case must be considered valid, unless the circumstance of its being given to obtain the grantor's release from guardianship invalidates it.

The power given to the county courts, in relation to the discharge of spendthrifts from guardianship, is almost unlimited. They are empowered to grant " such relief, as to them may seem just and reasonable." One object of the guardianship being to save the ward's family from want, and another to indemnify the town from consequent loss and expense, the court might very justly consider, that if one of these objects had been secured, it would be preferable to discharge the ward from further surveillance, and trust to consequences in regard to the other. As this unlimited authority has been confided to the county court, and the con-

veyance in question was taken by their express direction, we

should be slow to declare it void, on account of the consideration for which it was executed being against law, unless a very clear case of abuse of authority could be made out, which does not seem to be attempted in the present case.

The effect of the deed of Daniel Hurlbut to Jeremiah French remains to be considered. It is a deed of bargain and sale, in common form, to French as trustee for the town of Williston, conditioned to be void, " if the said Daniel Hurlbut shall indemnify and save harmless said town of Williston from all expenses which may be incurred by reason of said Daniel, or his family, becoming chargeable to such town, as paupers." This Daniel Hurlbut, as it appears by the case, had, by the town of Williston, been put under guardianship, as a spendthrift ; and the deed was executed, to induce the county court to release him from his guardianship. Hurlbut continued in possession of the premises until he conveyed them to the defendant, and subsequently became chargeable to the town of Williston, as a pauper. It is contended, that the town of Williston, upon the grantor becoming chargeable, became seised of the premises in their own right, under the statute of uses of Henry VIII. It is an unsettled question, whether that statute has ever been considered, by our courts, as of force in this state. Many of the English statutes, passed prior to our separation from that country, especially those in relation to the forms of proceedings in courts of justice, were adopted into our system of jurisprudence at a very early period, either by express enactment of the legislature, or by universal consent, as a part of the established customs of the land. It has recently been decided, by the United States circuit court in this state, that the English statute of uses is, and has always been, in force here. We have not been fully able to satisfy ourselves in relation to the subject, in the short time which we have been able to devote to it. We are very fully satisfied, however, that the present is not a case coming within the provisions of that statute, as expounded by the English courts.

Considering the nature and object of this conveyance, we think it is, at most, a conveyance to French, at first, for the use of the grantor and his heirs, and, conditionally, in trust for the benefit of the town. This would be a use upon a

CHITTENDEN, use, which second use the statute did not execute.   1 Shep.
January,   Touchstone, 507 and note.   15 Petersdorff, 245 and notes.
1839.
_____ 2 Swift's Digest, 105.
Williston       In the second place, this trustee evidently had an office
v.       to perform, else, why should he have been selected ?   This
White.   was strictly a personal confidence to expend the avails of the
rents of the land, and, if need be, the land itself, for the sup-
port of the grantor and his family, or to reimburse the
town, after they should become chargeable to them.   In
no such case could it, with any propriety, be said the statute
executed the use and vested the whole estate in the *cestui
que trust*.   Accordingly, such conveyances have been held
not to fall within the provision of the statute. 2 Swift's Dig.
107.   *Newhall v. Wheeler*, 7 Mass, 189.   *Horton v. Hor-
ton*, 7 Term R. 652.   1 Shep. Touchstone, 507 and note.
Should we so construe this deed, as to permit an absolute
title to vest in the town, upon the grantor becoming charge-
able, we should make the town trustees of the estate instead
of the person agreed upon by the town and Hurlbut, and
thus defeat the manifest object of the contracting parties.

Judgment affirmed.

WILLIAMS, C. J. dissenting.